*5 Opinion
WERDEGAR, J.
For purposes of applying the one-year-from-discovery limitation on commencement of attorney malpractice actions in Code of Civil Procedure section 340.6, subdivision (a) (section 340.6(a)),[1] who bears the burden of proving when the plaintiff discovered, or through the use of reasonable diligence should have discovered, the facts constituting the defendant’s alleged malpractice? As explained below, we hold the defendant bears that burden.
Background
In October 1992, plaintiff Arlayna Samuels filed her complaint in this attorney malpractice action, amending it three days later to allege defendants Terence J. Mix and Mix, Sneathern & Brown (collectively defendant or Mix) negligently had advised her to settle, for an inadequate amount, a personal injury claim stemming from injuries she attributed to ingesting the medication L-tryptophan. Samuels pleaded she first learned of Mix’s negligence after November 1991, upon discovering that Mix had substantially understated to her the actual value of her claim.
On March 29, 1993, Mix answered, denying all the allegations of the complaint and alleging numerous affirmative defenses, including that every cause of action in this lawsuit is barred by an applicable statute of limitations, including, but not limited to, section 340.6.
The superior court granted Mix’s motion to bifurcate the proceedings and separately try the statute of limitations issue. Mix moved in limine for an *6 order burdening Samuels to establish, by a preponderance of the evidence, that the statute of limitations had not run; the court granted Mix’s motion.
At the bifurcated trial, only plaintiff Samuels and Attorney Donald Hildre, whom Samuels previously had consulted, testified. As the Court of Appeal explained, Samuels, who suffered from an incurable blood and muscular disease she attributed to ingesting L-tryptophan, retained defendant Mix in May of 1990 to represent her in a personal injury lawsuit against the drug’s manufacturer, Showa Denko. Showa Denko offered to settle for $400,000, but Samuels, thinking the case worth $2 million, inquired of Mix regarding the value of her claim. Mix told Samuels the case was not worth as much as Samuels thought. Characterizing Showa Denko’s offer as “very good” and the best he had seen, he recommended she accept it because Showa Denko might file for bankruptcy.
In December of 1990, Samuels, on Mix’s advice, accepted Showa Denko’s settlement offer. In October of the following year, her medical condition deteriorated. Samuels met briefly with Donald Hildre, an attorney specializing in L-tryptophan cases whom she had met through a support group, about the possibility of reopening her case against Showa Denko. She brought him certain documents. In November 1991, Samuels told Hildre she had settled with Showa Denko for $400,000. Thereafter, in early 1992, Samuels obtained from Mix a copy of the settlement agreement and conveyed it to Hildre.
Hildre referred Samuels to a doctor. In July of 1992, after reviewing medical test results, Hildre told Samuels she had settled her case against Showa Denko for an inadequate amount.
The court refused Samuels’s proffered instruction that Mix had the burden to prove the lawsuit was untimely filed. The court, rather, instructed the jury that Samuels had the burden of proving that the lawsuit was timely filed.
By a vote of nine to three, the jury specially found Samuels had failed to commence her suit within one year from the date she discovered, or through the use of reasonable diligence should have discovered, the facts constituting Mix’s wrongful act or omission. In accordance with that special verdict, the court entered judgment for Mix.
Samuels appealed. The Court of Appeal reversed. We granted Mix’s petition for review.
Discussion
Pursuant to section 340.6(a), an attorney malpractice action “shall be commenced within one year after the plaintiff discovers, or through the use *7 of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first.” “[U]nder the provisions of section 340.6, discovery of the negligent act or omission initiates the [one-year] statutory period . . . .” (Adams v. Paul (1995) 11 Cal.4th 583, 589, fn. 2 [46 Cal.Rptr.2d 594, 904 P.2d 1205].)
The Court of Appeal concluded the trial court erred in instructing the jury that plaintiff had the burden of proving, by a preponderance of the evidence, all the facts necessary to establish that this action was timely filed, and in rejecting her proffered instructions that defendant bore the burden of proving the suit was untimely. For the following reasons, we agree with the Court of Appeal.
1. Plain Language
On its face, section 340.6(a) states “two distinct and alternative limitation periods: one year after actual or constructive discovery, or four years after occurrence (the date of the wrongful act or omission), whichever occurs first.” (Radovich v. Locke-Paddon (1995) 35 Cal.App.4th 946, 966 [41 Cal.Rptr.2d 573], italics in original; see Regents of University of California v. Hartford Acc. & Indem. Co. (1978) 21 Cal.3d 624, 640-641 & fn. 12 [147 Cal.Rptr. 486, 581 P.2d 197] [by implication].) As defendant concedes, in section 340.6 the Legislature provided an affirmative defense to a cause of action for attorney malpractice. (See Norgart v. Upjohn Co. (1999) 21 Cal.4th 383, 396 [87 Cal.Rptr.2d 453, 981 P.2d 79]; Fuller v. White (1948) 33 Cal.2d 236, 240 [201 P.2d 16].)
Section 500 of the Evidence Code provides that “Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting.” Defendant is asserting section 340.6(a)’s one-year-from-discovery limitation defense. In plain language, section 340.6(a) makes essential to that defense the fact that any attorney malpractice action against which it is invoked was not “commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission . . . .” Absent a compelling reason for doing otherwise, we must construe section 340.6(a) in accordance with its plain language (cf. Belton v. Bowers Ambulance Service (1999) 20 Cal.4th 928, 931-932 [86 Cal.Rptr.2d 107, 978 P.2d 591]) [tolling provision in statute of limitations on actions against health care providers]; Rossi v. Brown (1995) 9 Cal.4th 688, 694 [38 Cal.Rptr.2d 363, 889 P.2d 557] [state Constitution and local charter]) and the normal allocation of the *8 burden of proof established by the Legislature (Aydin Corp. v. First State Ins. Co. (1998) 18 Cal.4th 1183, 1193 [77 Cal.Rptr.2d 537, 959 P.2d 1213]; Fukuda v. City of Angels (1999) 20 Cal.4th 805, 820 [85 Cal.Rptr.2d 696, 977 P.2d 693]).
Just as plainly as section 340.6(a) makes the plaintiff’s actual or constructive discovery of the defendant’s wrongdoing an element of its one-year-from-discovery limitations defense, it does not—nor does any other law— make the plaintiff’s actual or constructive discovery of the defendant’s wrongdoing an element of a prima facie claim for attorney malpractice. (See Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison (1998) 18 Cal.4th 739, 762 [76 Cal.Rptr.2d 749, 958 P.2d 1062] (Jordache) [noting “discovery of damage is not a necessary component of actual injury under section 340.6, subdivision (a)(1)” (italics in original)].) In this case, if defendant had never pled the statute of limitations as a defense, that defense would have been forfeited (Minton v. Cavaney (1961) 56 Cal.2d 576, 581 [15 Cal.Rptr. 641, 364 P.2d 473]) and plaintiff would have been entitled to a trial on the merits of her claim, regardless of whether her action was timely under the terms of section 340.6 (Flowers v. Torrance Memorial Hospital Medical Center (1994) 8 Cal.4th 992, 999 [35 Cal.Rptr.2d 685, 884 P.2d 142] [legislatively imposed medical malpractice statute of limitations could not alter the substance of such actions]).
In this case of first impression, defendant obviously cannot cite any existing law burdening plaintiff with negating the facts essential to section 340.6(a)’s one-year-from-discovery limitation defense to attorney malpractice actions. (See generally, California Correctional Peace Officers Assn. v. State Personnel Bd. (1995) 10 Cal.4th 1133, 1154 [43 Cal.Rptr.2d 693, 899 P.2d 79] [noting that Evidence Code section 500’s general rule allocating the burden of proof “does not supersede other, specific, rules established by statute or judicial decision”].) It follows that, until and unless we create a new exception to the general rule, the burden of proving plaintiff’s actual or constructive discovery of defendant’s wrongdoing in connection with that defense falls statutorily to defendant. (Evid. Code, § 500; see, e.g., Buss v. Superior Court (1997) 16 Cal.4th 35, 53 [65 Cal.Rptr.2d 366, 939 P.2d 766] [declining to create new exception to Evidence Code section 500 for insurer seeking reimbursement of defense costs].)
Thus, in accordance with section 340.6(a)’s plain language, defendant, if he is to avail himself of the statute’s one-year-from-discovery limitation defense, has the burden of proving, under the “traditional allocation of the burden of proof" (Fukuda v. City of Angels, supra, 20 Cal.4th at p. 820, citing Evid. Code, § 500), that plaintiff discovered or should have discovered the *9 facts alleged to constitute defendant’s wrongdoing more than one year prior to filing this action. Defendant’s remaining arguments may be considered as proffered grounds for our declaring a departure from Evidence Code section 500’s general rule.
2. Common Law “Discovery Rule’’
Defendant first suggests that, in enacting section 340.6, the Legislature intended that burdens of proof thereunder be allocated just as they have been allocated under the common law “discovery rule,” a rule of delayed accrual that lies for the benefit of some plaintiffs with professional malpractice claims. (See Norgart v. Upjohn Co., supra, 21 Cal.4th at pp. 397-398 [generally describing the rule].) For the following reasons, we are not persuaded.
The common law discovery rule, where applicable, indefinitely delays accrual of a cause of action until the plaintiff discovers or reasonably has cause to discover the facts constituting it. As we have explained, the discovery rule “may be expressed by the Legislature or implied by the courts” and is the “ ‘most important’ ” exception to the general rule that a cause of action accrues when the allegedly wrongful result occurs. (Norgart v. Upjohn Co., supra, 21 Cal.4th at p. 397, citing Neel v. Magana, Olney, Levy, Cathcart & Gelfand (1971) 6 Cal.3d 176, 179 [98 Cal.Rptr. 837, 491 P.2d 421] (Neel); 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 463, p. 583.)
“In cases of professional malpractice . . . postponement of the period of limitations until discovery finds justification in the special nature of the relationship between the professional . . . and [the] client.” (Neel, supra, 6 Cal.3d at pp. 187-188.) Thus, in certain recognized contexts, a client’s reasonably delayed discovery of facts constituting actionable professional misbehavior may delay accrual of a cause of action based thereon. (United States Liab. Ins. Co. v. Haidinger-Hayes, Inc. (1970) 1 Cal.3d 586, 596 [83 Cal.Rptr. 418, 463 P.2d 770] [listing types of actions in which “courts have recognized a postponement of the accrual until the beneficiary has knowledge or notice of the act constituting a breach of fidelity”]; see, e.g., April Enterprises, Inc. v. KTTV (1983) 147 Cal.App.3d 805, 832 [195 Cal.Rptr. 421] [“discovery rule may be applied to breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time”]; 3 Witkin, Cal. Procedure, supra, Actions, § 594, pp. 763-764, and authorities listed there [delayed accrual; accountant malpractice cases]; 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 884, pp. 343-344 [delayed accrual; other actions].)
*10 According to defendant, in applying the common law discovery rule, California courts generally have burdened plaintiffs with justifying any undue delay in filing their complaints. (See generally, April Enterprises, Inc. v. KTTV, supra, 147 Cal.App.3d at pp. 829, 833.) Defendant further asserts that the Legislature, when enacting the one-year-from-discovery provision of section 340.6(a) in 1977 (Stats. 1977, ch. 863, § 1, p. 2609), intended to codify for attorney malpractice cases á version of the common law discovery rule of delayed accrual, one that incorporates the prevailing judicial allocation of burdens of proof thereunder. In advancing this legislative intent argument, however, defendant refers neither to the text of section 340.6 nor to any legislative history materials.
Defendant does not dispute he has the burden of proof on section 340.6(a)’s basic four-years-from-occurrence limitation on attorney malpractice actions. As previously explained, a defendant must prove the facts necessary to enjoy the benefit of a statute of limitations (Evid. Code, § 500; see, e.g., Kaiser Foundation Hospitals v. Workers' Comp. Appeals Bd. (1985) 39 Cal.3d 57, 67, fn. 8 [216 Cal.Rptr. 115, 702 P.2d 197]; Colonial Ins. Co. v. Ind. Acc. Com. (1945) 27 Cal.2d 437, 440 [164 P.2d 490]) and, indisputably, section 340.6(a)’s four-year provision is, as section 340.6(a) is generally, a statute of limitations.
For the same reason, defendant has the burden of proof on section 340.6(a)’s alternate one-year-from-discovery limitation on attorney malpractice actions. Simply stated, this one-year alternate provision also is a statute of limitations and, therefore, a defendant must prove the facts necessary to enjoy its benefit. That the alternate limitations provision happens to use verbal cognates of the noun “discovery” cannot be deemed to effect an incorporation of the “discovery rule,” complete and in its entirety. Unlike the discovery rule, which is “treated as an exception” to the statute of limitations (Hobart v. Hobart Estate Co. (1945) 26 Cal.2d 412, 437 [159 P.2d 958]), section 340.6(a)’s alternate limitations provision is indeed a statute of limitations. And unlike the discovery rule, which runs in favor of the plaintiff by enlarging his or her time without a set limit, the alternate limitations provision of section 340.6(a) runs in favor of the defendant by cutting off the plaintiff’s time definitively. (See Flowers v. Torrance Memorial Hospital Medical Center, supra, 8 Cal.4th at p. 999.)
The alternate limitations provision, moreover, is potentially available only to the defendant, and only to reduce the limitations period of four years down to as little as one. Accordingly, whether or not the alternate limitations provision is actually available in any given case is for the defendant to prove. For, if the defendant has the burden of proof on the basic limitations *11 provision, which can only prescribe a longer period, a fortiori he has the burden of proof on the alternate limitations provision, which can only prescribe a shorter one.
In seeking to analogize section 340.6(a) to the common law discovery rule, defendant relies heavily on a remark we made in Laird v. Blacker (1992) 2 Cal.4th 606 [7 Cal.Rptr.2d 550, 828 P.2d 691] (Laird). In Laird, we held that section 340.6(a)’s one-year-from-discovery limitation period is not tolled during the time the malpractice plaintiff appeals an underlying action, but, rather, commences when he or she suffers an adverse judgment or dismissal in the underlying action. (Laird, supra, at p. 609.) In the course of reaching that conclusion, we remarked that “when the Legislature adopted section 340.6 in 1977, it implicitly rejected the term Irremediable damage’ and codified the discovery rule of Neel . . . and Budd v. Nixen (1971) 6 Cal.3d 195, 198 .... These cases hold that a cause of action for legal malpractice accrues when the client discovers or should discover the facts essential to the malpractice claim, and suffers appreciable and actual harm from the malpractice. Discovery of any appreciable and actual harm from the attorney’s negligent conduct establishes a cause of action and begins the running of the limitations period.” (Laird, supra, at p. 611, citing Budd v. Nixen (1971) 6 Cal.3d 195, 201 [98 Cal.Rptr. 849, 491 P.2d 433] (Budd).)
Defendant makes too much of our remark in Laird. In context, its import is simply that, under the statute and mentioned cases, “a cause of action for legal malpractice accrues when the client discovers or should discover the facts essential to the malpractice claim, and suffers appreciable and actual harm from the malpractice” (Laird, supra, 2 Cal.4th at p. 611; see also International Engine Parts, Inc. v. Feddersen & Co. (1995) 9 Cal.4th 606, 615 [38 Cal.Rptr.2d 150, 888 P.2d 1279]), an observation not bearing on the question presented here. Certainly the remark is not authority for the sweeping notion that all common law appendages to the discovery rule are automatically pertinent under section 340.6. To the contrary, we quite recently clarified that “[s]ection 340.6 is not simply a mechanical transcription of the holdings in Neel. . . and Budd] the Legislature plainly intended to address additional concerns when it established a separate statute of limitations for legal malpractice actions.” (Jordache, supra, 18 Cal.4th at p. 748.)
In Jordache, as in Laird, we addressed the meaning of the phrase “actual injury” found in section 340.6(a)’s tolling provisions. (§ 340.6(a)(1).) We held the statute “will not toll the limitations period once the client can plead damages that could establish a cause of action for legal malpractice.” (Jordache, supra, 18 Cal.4th at p. 743.) In so holding, we again remarked (as *12 we had in Laird) that “the Legislature intended to codify” Budd in section 340.6 (Jordache, supra, at p. 743, citing Laird, supra, 2 Cal.4th at p. 611). We clarified, however, that we meant thereby only “the actual injury tolling provision derived from the holding in Budd'’ (Jordache, supra, at p. 748, fn. omitted) and again acknowledged that the Legislature had “intended to address additional concerns [beyond those addressed in Neel and Budd] when it established a separate statute of limitations for legal malpractice actions” (ibid.). In fact, we noted, “[i]n section 340.6, the Legislature established a detailed, explicit, and exclusive scheme for commencing and tolling the legal malpractice limitations periods.” (Jordache, supra, at p. 764.)
Contrary to the expansive reading defendant would give the Laird dictum, we believe that, in enacting section 340.6, the Legislature clearly intended more than merely to codify the common law discovery rule, because section 340.6(a), even absent discovery, absolutely cuts off actions after a specified period (“four years from the date of the wrongful act or omission”); the common law discovery rule, as discussed, includes no such cutoff. (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 298 (1977-1978 Reg. Sess.) May 12, 1977, at p. 3 [noting the then existing attorney malpractice statute of limitations “is virtually open-ended as the statute does not commence to run until discovery” and that “Assembly Bill 298 prescribes a four-year outer-limit”].)
We also observe that, in enacting section 340.6, the Legislature apparently intended to benefit potential attorney malpractice defendants, insofar as section 340.6 ended Neel’s regime of endless potential exposure under the common law discovery rule. Members of the Assembly Judiciary Committee considered and reviewed the article by Ronald E. Mallen, Panacea or Pandora's Box? A Statute of Limitations for Lawyers (1977) 52 State Bar J. 22 (Mallen, Panacea), wherein Mr. Mallen proposed a legal malpractice statute of limitations. (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 298, supra, at p. 3; Southland Mechanical Constructors Corp. v. Nixen (1981) 119 Cal.App.3d 417, 428 [173 Cal.Rptr. 917], superseded by statute on another point [noting the bill digest’s reference to Mallen, Panacea].) Section 340.6 constitutes relief for potential attorney malpractice defendants because it provides two alternate bases—either four years from occurrence or one year from discovery—for cutting off potential liability for attorney malpractice that otherwise, under the common law discovery rule, might have lingered indefinitely. (Mallen, Panacea, supra, 52 State Bar J. at pp. 23-24 [proposing two-year/four-year attorney malpractice limitations statute similar to section 340.6 as “legislative relief . . . but this time for the attorney” from the “literally interminate liability of the discovery rule”]; cf. *13 Newell v. Richards (1991) 323 Md. 717 [594 A.2d 1152, 1156-1158] [holding Maryland legislature must have intended to burden a defendant invoking alternative date-of-injury/date-of-discovery medical malpractice limitations statute, similar to section 340.6(a), with proving when injury was discovered, partly on ground the “ ‘purpose of the statute, readily evident from its terms, was to contain the “long-tail” effect of the [common law] discovery rule’ ”].)
While we had no occasion in Jordache, supra, 18 Cal.4th 739, to detail the “additional concerns” underlying the Legislature’s enactment of section 340.6’s “exclusive scheme,” we did, in the course of deciding the tolling question presented in that case, note that “section 340.6 reflects the balance the Legislature struck between a plaintiff’s interest in pursuing a meritorious claim and the public policy interests in prompt assertion of known claims.” (18 Cal.4th at p. 756.) In that same vein, we quite recently observed that to “establish any particular limitations period under any particular statute of limitations entails the striking of a balance” between the public policy favoring extinction of stale claims and that favoring resolution of disputes on their merits. (Norgart v. Upjohn Co., supra, 21 Cal.4th at p. 396.) Because it involves such policymaking, to establish a statute of limitations “belongs to the Legislature alone [citation], subject only to constitutional constraints [citation].” (Id. at pp. 396-397, citing Weinberger v. Weidman (1901) 134 Cal. 599, 602 [66 P. 869]; Regents of University of California v. Superior Court (1999) 20 Cal.4th 509, 534 [85 Cal.Rptr.2d 257, 976 P.2d 808].)
While our judicially engrafting section 340.6(a) with the common law discovery rule’s exception to the normal burden of proof might not directly invade the Legislature’s exclusive province to specify limitation periods, it well might indirectly do so. This is because such a judicially recognized exception risks disturbing the policy balance among the various societal interests that the Legislature achieved when enacting the statute, including the interests in hearing meritorious malpractice suits, extinguishing stale claims, and avoiding consumer costs attendant on indefinite malpractice exposure. (See generally, Mallen, Panacea, supra, 52 State Bar J. 22.)
Thus, defendant fails to persuade us that our Legislature, when enacting section 340.6(a), intended to incorporate therein every judicially formulated appendage to the common law discovery rule.[2] Neither the rule itself, Neel's gloss on it (that it “finds justification in the special nature of the relationship *14 between the professional . . . and [the] client”) (Neel, supra, 6 Cal.3d at p. 188), nor Laird's remark that it was “codified” in section 340.6(a) (Laird, supra, 2 Cal.4th at p. 611), provides a sufficient ground for relieving defendant of his statutory burden to prove “each fact the existence or nonexistence of which is essential” (Evid. Code, § 500) to his one-year-from-discovery limitations defense.
3. Analogy to Fraud Claims
Defendant argues that, as plaintiffs in some fraud actions are required, in order to avoid the three-year limitation on commencement of such actions found in Code of Civil Procedure section 338, subdivision (d) (section 338(d)), to plead and prove their reasonably delayed discovery of the conduct they allege to constitute fraud (3 Witkin, Cal. Procedure, supra, Actions, § 602, pp. 773-775; 5 Witkin, Cal. Procedure, supra, Pleading, § 883, pp. 342-343, and authorities cited there), and as section 340.6(a) is worded somewhat similarly to section 338(d), plaintiff here should face a similar requirement.
Section 338(d) provides that a plaintiff must commence within three years any “action for relief on the ground of fraud or mistake. The cause of action in that case is not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.” Defendant correctly notes that in Hobart v. Hobart Estate Co., supra, 26 Cal.2d 412, we stated: “The provision tolling operation of [section 338(d)] until discovery of the fraud has long been treated as an exception and, accordingly, this court has held that if an action is brought more than three years after commission of the fraud, plaintiff has the burden of pleading and proving that he did not make the discovery until within three years prior to the filing of his complaint.” (Id. at p. 437, citing Sublette v. Tinney (1858) 9 Cal. 423; Lady Washington C. Co. v. Wood (1896) 113 Cal. 482 [45 P. 809]; Consolidated R. & P. Co. v. Scarborough (1932) 216 Cal. 698 [16 P.2d 268]; Knapp v. Knapp (1940) 15 Cal.2d 237, 242 [100 P.2d 759].) [3]
In suggesting that we construe section 340.6(a) similarly to section 338(d), defendant emphasizes the presence in each of a reference to when *? the plaintiff discovers the facts underlying his or her cause of action. While defendant errs in calling the two references “almost identical,” each statute indeed contains a discovery provision. (Compare § 340.6(a) [“action . . . shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission”] with § 338(d) [“cause of action ... is not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake”].)
Defendant seeks to buttress his argument based on this statutory phrasing by analogizing fraud and malpractice claims, generally. Defendant points to our suggestion in Neel that “ ‘[c]ases in which the defendant stands in a fiduciary relationship to the plaintiff are frequently treated as if they involved fraudulent concealment of the cause of action by the defendant. The theory is that although the defendant makes no active misrepresentation, this element “is supplied by an affirmative obligation to make full disclosure, and the non-disclosure itself is a ‘fraud.’ ” ’ ” (Neel, supra, 6 Cal.3d at p. 189, quoting Amen v. Merced County Title Co. (1962) 58 Cal.2d 528, 534 [25 Cal.Rptr. 65, 375 P.2d 33].)
For several reasons, we agree with the Court of Appeal that, while there may be some linguistic similarity between parts of section 340.6(a) and section 338(d), the case law involving the statute of limitations for fraud does not help defendant here.
First, the relatively recent vintage of section 340.6(a), which, as noted, was added to the code in 1977 (Stats. 1977, ch. 863, § 1, p. 2609), as compared to section 338(d), which originally was enacted in 1872 (Historical Note, 13A West's Ann. Code Civ. Proc. (1982 ed.) foll. § 338, p. 295), affords us a different perspective in construing the former than courts have enjoyed in construing the latter. Thus, legislative enactment of the fraud limitations statute, including its discovery provision, predated judicial development of the common law discovery rule (see Neel, supra, 6 Cal.3d at p. 192, fn. 32; Hobart v. Hobart Estate Co., supra, 26 Cal.2d at p. 437; April Enterprises, Inc. v. KTTV, supra, 147 Cal.App.3d at pp. 828-829) and necessarily cannot have embodied a rejection of that jurisprudence. More recently, however, “in section 340.6 the Legislature has chosen to abrogate the common law rule and to enact a special rule for actions against attorneys for wrongful acts or omissions.” (Radovich v. Locke-Paddon, supra, 35 Cal.App.4th at p. 970; see also Jordache, supra, 18 Cal.4th at p. 748.) At least one of the Legislature’s purposes in enacting section 340.6 evidently was to benefit potential attorney malpractice defendants, providing them with a means of cutting off the endless exposure to suit that existed under the *16 common law discovery rule. (Southland Mechanical Constructors Corp. v. Nixen, supra, 119 Cal.App.3d at p. 428; Mallen, Panacea, supra, 52 State Bar J. at pp. 23-24.) To the extent it serves that specific remedial purpose, of course, “analyses of other statutes are not pertinent to section 340.6.” (Radovich v. Locke-Paddon, supra, at p. 970.)
Second, the respective provisions are structured differently. Section 338(d)’s discovery provision, like the common law discovery rule, affords fraud plaintiffs a rule of indefinitely delayed accrual (“cause of action ... is not to be deemed to have accrued”), thus saving certain otherwise barred claims when plaintiffs can prove diligence. Section 340.6(a)’s discovery provision, by contrast, affords attorney malpractice defendants a defensive limitation on commencement of lawsuits (“action . . . shall be commenced within”), thus barring suit on otherwise viable claims when malpractice defendants—as we conclude—can prove a plaintiff’s lack of diligence. (Neel, supra, 6 Cal.3d at p. 191 [distinguishing between “classifying . . . civil actions as to their period of limitation” from “the different issue as to when the cause of action accrues” (italics in original)].)[4] While the difference in a statute of limitations between a delayed accrual provision and one limiting commencement of actions may be primarily linguistic, without significant practical import in a given case, the Legislature’s choice of terminology in a statute may, nevertheless, illustrate the legislative intent lying behind its enactment. Thus, to burden plaintiffs with proving that their causes of action have accrued (as section 338(d) has been construed to require of fraud plaintiffs) is one thing; to burden plaintiffs (as defendant suggests we should in construing section 340.6(a)) with ¿/¿proving dilatory commencement, an element of their opponents’ limitations defense under that statute, would be quite another.
Third, the two statutes function differently in their respective areas of the law. As mentioned, section 338(d)’s discovery provision has “long been treated as an exception” to the limitations defense otherwise provided by *17 section 338(d). (Hobart v. Hobart Estate Co., supra, 26 Cal.2d at p. 437.) Section 340.6(a)’s discovery provision is, by contrast, not an exception, but itself a discrete, independent limitations defense. (Flowers v. Torrance Memorial Hospital Medical Center, supra, 8 Cal.4th at p. 999; Regents of University of California v. Hartford Acc. & Indem. Co., supra, 21 Cal.3d at pp. 640-641; Radovich v. Locke-Paddon, supra, 35 Cal.App.4th at p. 966; see generally, 3 Witkin, Cal. Procedure, supra, Actions, § 581, p. 737.)
Given these fundamental differences in provenance, structure and function between the discovery provisions of section 338(d) and section 340.6(a), we cannot conclude that the latter’s plain language is somehow trumped by a judicial gloss relating to the former, so as to determine the burden of proof question presented in this case. Rather, we must construe section 340.6 on its own terms.
4. Fairness
Even if the Legislature did not specifically intend section 340.6 to incorporate the common law discovery rule’s entire related jurisprudence, defendant suggests, we should declare as a matter of fairness and judicial policy that proof burdens under the statute are the same as under the common law rule. As defendant points out, in other contexts we have adverted to “fundamental fairness” as the “lodestar for our analysis” in determining the incidence of the burden of proof. (See, e.g., Adams v. Murakami (1991) 54 Cal.3d 105, 119-120 [284 Cal.Rptr. 318, 813 P.2d 1348] [quoting the California Law Revision Commission’s remark that such a determination “ ‘is merely a question of policy and fairness based on experience in the different situations’ ” (italics omitted)].)
In advancing this policy argument, defendant reiterates that, in order to invoke the common law discovery rule, a plaintiff bears the burden of proving that reasonable diligence to ascertain the facts underlying a claim did not bear fruit until a time within the applicable limitations period. By analogy, defendant argues, the same should apply here. Because plaintiff Samuels seeks to bring herself within the one-year-from-discovery limitations period of section 340.6(a) by asserting she did not know, and could not with reasonable diligence have known, the facts allegedly constituting Mix’s legal malpractice more than one year before she instituted this action, Samuels fairly is burdened with proving the truth of her assertion. For support, defendant cites a prominent treatise in the field. (See 2 Mallen & Smith, Legal Malpractice (4th ed. 1996) § 21.15, pp. 846-847 [“The onus of the discovery rule is the threat of open-ended liability of attorneys. The correlative burden on the client is the need to act with diligence in pursuing *18 existing remedies. A consequence of that rule is that, if suit is filed after the apparent expiration [of] the statute of limitations, the plaintiff will be required to both plead and prove facts explaining the lack of discovery.” (Fn. omitted.)].)
To begin with, the cited treatise extract and its argument, which concern the common law discovery rule, do not particularly bear on our task, which is the construction of section 340.6(a). As we need hardly repeat, unlike the common law rule discussed in the treatise, section 340.6(a) does not involve “the threat of open-ended liability of attorneys.” Rather, the statute supplies potential attorney malpractice defendants with two distinct limitations defenses barring, upon requisite proof, commencement of actions filed either four years after the alleged wrong or one year after discovery of the alleged wrong, whichever occurs first. (§ 340.6(a); cf. Newell v. Richards, supra, 594 A.2d at pp. 1155-1158 [construing analogous statute of limitations].)
In any event, contrary to defendant’s characterization, plaintiff does not seek to “excuse” herself from compliance with an otherwise expired statute of limitations. The discovery provision of section 340.6(a) describes alternative time limitations on commencement of actions for attorney malpractice, not exceptions to other limitations or rules. (See Flowers v. Torrance Memorial Hospital Medical Center, supra, 8 Cal.4th at p. 999; Regents of University of California v. Hartford Acc. & Indem. Co., supra, 21 Cal.3d at pp. 640-641; Radovich v. Locke-Paddon, supra, 35 Cal.App.4th at p. 966.)
Perhaps more fundamentally, the observation, that because the common law discovery rule generally benefits plaintiffs it has been thought fair to burden them with proving its elements (see, e.g., Mangini v. Aerojet-General Corp., supra, 230 Cal.App.3d at pp. 1149-1150 [negligence], citing G. D. Searle & Co. v. Superior Court (1975) 49 Cal.App.3d 22, 26 [122 Cal.Rptr. 218] [products liability]; April Enterprises, Inc. v. KTTV, supra, 147 Cal.App.3d at p. 832 [breach of contract]), supports plaintiff’s position in this case, not defendant’s. Plainly, in providing for definite and relatively early termination of attorney malpractice exposure, section 340.6 generally benefits defendants. Section 340.6 sets up two alternative limitations periods, and defendants are just as fairly burdened with proving entitlement to the more beneficial one-year period as they are with proving entitlement to the less beneficial four-year period. When the applicability of the one-year period is at issue, the defendant is the one who seeks to shorten the limitations period that would otherwise apply. “The general rule has long been that ‘He who takes the benefit must bear the burden.’ ” (Adams v. Murakami, supra, 54 Cal.3d at p. 120, quoting Civ. Code, § 3521.)
Moreover, whereas the common law discovery rule and the fraud tolling provision of section 338(d) each place a very substantial burden on defendants, such as may seem to warrant burdening plaintiffs with justifying any *19 delay, section 340.6(a), with its four-year-from-occurrence limitation, does not. Accordingly, insofar as general considerations of fairness may be thought to bear, they suggest the defendant appropriately is burdened with proving all the elements of section 340.6(a)’s one-year-from-discovery defense.
5. Access to Evidence
Finally, defendant points out that the Evidence Code section 500 rule allocating the burden of proof applies “[e]xcept as otherwise provided by law” and that the exception, as we have stated, “ ‘is included in recognition of the fact that the burden of proof is sometimes allocated in a manner that is at variance with the general rule. In determining whether the normal allocation of the burden of proof should be altered, the courts consider a number of factors: the knowledge of the parties concerning the particular fact, the availability of the evidence to the parties, the most desirable result in terms of public policy in the absence of proof of the particular fact, and the probability of the existence or nonexistence of the fact.’ ” (Lakin v. Watkins Associated Industries (1993) 6 Cal.4th 644, 660-661 [25 Cal.Rptr.2d 109, 863 P.2d 179], quoting Cal. Law Revision Com. com., 29B West's Ann. Evid. Code (1966 ed.) foll. § 500, p. 431; see also Aydin Corp. v. First State Ins. Co., supra, 18 Cal.4th at p. 1193.)
Defendant contends that facts demonstrating a typical attorney malpractice plaintiff’s knowledge of a typical defendant’s malpractice are likely to exist peculiarly within the plaintiff’s access and control. According to defendant, therefore, we should as a matter of policy declare that the burden of proving such facts, when relevant under section 340.6, belongs to plaintiff. Again, we are not persuaded.
We have not routinely found exceptions to Evidence Code section 500’s general rule on the basis of relative access to evidence. (See, e.g., Adams v. Murakami, supra, 54 Cal.3d at pp. 120-121 [declining to burden defendant with proving the state of his own finances when punitive damages are in issue].) As plaintiff points out, nearly all the allegations required of the plaintiffs in tort and contract actions relate to the defendants’ acts or omissions and so might be thought, almost by definition, to describe matters peculiarly within the defendants’ knowledge or control. That circumstance, however, has not occasioned a wholesale departure in tort and contract actions from the ordinary allocation of proof burdens.
Moreover, to the extent section 340.6(a)’s one-year-from-discovery limitations period may be triggered by a circumstance having no necessary *20 relation to the plaintiff’s actual state of mind—namely, that the plaintiff “through the use of reasonable diligence should have discovered” the defendant’s wrongful conduct—no reason appears for assuming that, in any given case, “knowledge . . . concerning the particular fact” (Lakin v. Watkins Associated Industries, supra, 6 Cal.4th at p. 660) or facts actually triggering the limitations period will lie within one party’s grasp but not the other’s.
In light of Evidence Code section 500’s mandate and the plain language of section 340.6(a), we need not strain to discern (because we are not free to impose) a universally “desirable result in terms of public policy” (Lakin v. Watkins Associated Industries, supra, 6 Cal.4th at p. 660) for all section 340.6(a) disputes. As we recently observed, “the affirmative defense based on the statute of limitations should not be characterized by courts as either ‘favored’ or ‘disfavored,’ ” as “[t]he two public policies ... for repose and ... for disposition on the merits ... are equally strong, the one being no less important or substantial than the other.” (Norgart v. Upjohn Co., supra, 21 Cal.4th at p. 396, citing numerous authorities.) In any event, “[t]o establish any particular limitations period under any particular statute of limitations entails the striking of a balance between the two,” and thus “[t]o establish any such period under any such statute belongs to the Legislature alone [citation], subject only to constitutional constraints [citation].” (Id. at pp. 396-397.)
Finally, the record in this case reveals no superior or enhanced access to evidence on plaintiff’s part. The main witness on delayed discovery was the attorney, Hildre. While common sense suggests Samuels may at the outset have enjoyed certain practical advantages in contacting Hildre, whom she had consulted in his professional capacity, no reason appears to assume, in assessing “the availability of the evidence to the parties” (Lakin v. Watkins Associated Industries, supra, 6 Cal.4th at p. 660), that, ultimately, either party enjoyed special or unequal access to Hildre’s testimony. We agree with plaintiff that no valid basis exists for shifting to her the burden of proof on the discovery prong of section 340.6(a) on the speculation that she had more peculiar access to relevant evidence.[5]
In sum, defendant fails to demonstrate that our judicial interference with the “traditional allocation of the burden of proof’ (Fukuda v. City of Angels, *21 supra, 20 Cal.4th at p. 820) when defendants rely on section 340.6(a) would be either proper or desirable. Rather, in this case, as in the past, we shall “strictly follow the statute that governs the accrual and limitation of claims for attorney malpractice” (Wiley v. County of San Diego (1998) 19 Cal.4th 532, 546 [79 Cal.Rptr.2d 672, 966 P.2d 983] (conc. opn. of Werdegar, J.), citing § 340.6; see Steketee v. Lintz, Williams & Rothberg (1985) 38 Cal.3d 46, 56 [210 Cal.Rptr. 781, 694 P.2d 1153] [observing that statutes of limitations “ ‘are technical defenses which should be strictly construed to avoid the forfeiture of a plaintiff’s rights’ ”]) and uphold the Court of Appeal’s finding of instructional error.
The petition for review presents only the narrow legal question whether the trial court correctly allocated the burden of proof with respect to the one-year-from-discovery provision of section 340.6(a). In their briefing on the merits before this court, the parties have confined themselves to that issue, not disputing that the record contains conflicting evidence on the determinative issue of discovery, or the Court of Appeal’s conclusion that the trial court’s erroneous instructions must be considered prejudicial, since it is reasonably likely the jury verdict was based on them. Accordingly, we need not consider the question of prejudice here. (Cal. Rules of Court, rule 28(e)(2); People v. Weiss (1999) 20 Cal.4th 1073, 1076-1077 [86 Cal.Rptr.2d 337, 978 P.2d 1257].)
We nevertheless find no grounds for disagreeing with the Court of Appeal’s conclusion respecting prejudice, which was based on a detailed *22 examination of the conflicting trial testimony about Samuels’s discovery of the underlying facts. Among other things, the Court of Appeal noted that the parties disputed whether, after her October 1991 meeting with Attorney Hildre, plaintiff Samuels believed that defendant Mix had misrepresented Showa Denko’s true financial condition. The court also noted that, when cross-examined about apparent discrepancies between her trial and deposition testimony bearing on when she first suspected wrongdoing by Mix, Samuels testified to suffering from imprecise memory and argued that her deposition testimony referred not to knowledge of defendant’s wrongdoing in negotiating settlement but, rather, simply to her general disillusionment with defendant (based on his assertedly unauthorized use of a courier and discussing with others the amount of the settlement after stating it was confidential).
The Court of Appeal also appreciated that “ ‘few instructions are of greater importance than that which informs the jury which party bears the burden of proof on the issues in dispute.’ ” (Bernal v. Richard Wolf Medical Instruments Corp. (1990) 221 Cal.App.3d 1326, 1335 [272 Cal.Rptr. 41].) Nothing in the record indicates the erroneous instructions were mitigated or remedied by other instructions. (See Soule v. General Motors Corp. (1994) 8 Cal.4th 548, 570-571 [34 Cal.Rptr.2d 607, 882 P.2d 298].)
Disposition
For the foregoing reasons, the judgment of the Court of Appeal is affirmed.
George, C. J., Mosk, J., Kennard, J., Chin, J., and Brown, J., concurred.

 Code of Civil Procedure section 340.6 (section 340.6) provides, in its entirety:
“(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist:
“(1) The plaintiff has not sustained actual injury;
“(2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred;
“(3) The attorney willfully conceals the facts, constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation; and
“(4) The plaintiff is under a legal or physical disability which restricts the plaintiff’s ability to commence legal action.
“(b) In an action based upon an instrument in writing, the effective date of which depends upon some act or event of the future, the period of limitations provided for by this section shall commence to run upon the occurrence of such act or event.”

As the Court of Appeal explained, defendant’s reliance on Mangini v. Aerojet-General Corp. (1991) 230 Cal.App.3d 1125 [281 Cal.Rptr. 827], and April Enterprises, Inc. v. KTTV, supra, 147 Cal.App.3d 805, is misplaced. Those cases involved attempts by the plaintiffs to establish—under the common law discovery rule—that their causes of action had not accrued because their discovery of crucial facts was reasonably delayed. Those cases did not address *14 the question presented in this case, viz., whether defendant has proven the statutory elements of his section 340.6(a) limitations defense.

Our holding in Hobart was qualified in this manner: “ ‘It is only where the party defrauded should plainly have discovered the fraud except for his own inexcusable inattention that he will be charged with a discovery in advance of actual knowledge on his part.’ It follows that plaintiff is not barred because the means of discovery were available at an earlier date provided he has shown that he was not put on inquiry by any circumstances known to him or his agents at any time prior to the commencement of the three-year period . . . .” (Hobart v. Hobart Estate Co., supra, 26 Cal.2d at p. 439, italics omitted, quoting Victor Oil Co. v. Drum (1920) 184 Cal. 226, 241 [193 P. 243].)

Without analysis, we once included section 340.6(a) in a string citation to illustrate, in dictum, “rules postponing the accrual of a cause of action until a specified event occurs.” (Cuadra v. Millan (1998) 17 Cal.4th 855, 865, fn. 11 [72 Cal.Rptr.2d 687, 952 P.2d 704], citing, inter alia, §§ 338(d) and 340.6(a), italics in original; see also Burgon v. Kaiser Foundation Hospitals (1979) 93 Cal.App.3d 813, 818-824 [155 Cal.Rptr. 763] [describing Code Civ. Proc., § 340.5 to similar effect].) Our citation of section 340.6(a) in Cuadra v. Millan obviously is not authority for erasing all distinctions between accrual and discovery of a cause of action—a distinction not considered in that case (see People v. Gilbert (1969) 1 Cal.3d 475, 482, fn. 7 [82 Cal.Rptr. 724, 462 P.2d 580] [“cases are not authority for propositions not considered”])—whenever the Legislature invokes the latter in specifying a limitation period. In any event, to the extent Cuadra v. Millan, supra, 17 Cal.4th 855, and Burgon v. Kaiser Foundation Hospitals, supra, 93 Cal.App.3d 813, may contain language inconsistent with this opinion, they are disapproved.

Asserting that discovery of a lawyer’s malpractice will most often arise from the substance of the client’s communication with a second attorney, the dissent opines that malpractice plaintiffs who “peculiarly and exclusively” possess facts relevant to the one-year-from-discovery limitation defense will claim attorney-client privilege, thus preventing defendants from sustaining their burden. (Dis. opn., post, at p. 27.) We are not persuaded.
First, we decline to assume that a malpractice plaintiff will misrepresent, under oath, the date on which he discovered the facts underlying his action. Perjury, a felony punishable by up to four years’ imprisonment (Pen. Code, § 126), may not be presumed. (Estate of Brady (1918) 177 Cal. 537, 540 [171 P. 303]; Eversdon v. Mayhew (1890) 85 Cal. 1, 9-10.) *21 Moreover, without discounting the temptation litigants may feel to prevaricate, the dissent’s paradigmatic “lawyer worth his salt” (dis. opn., post, at p. 28), we submit, may be counted upon as much to discourage perjury as damaging disclosures. (See Nix v. Whiteside (1986) 475 U.S. 157, 174 [106 S.Ct. 988, 997-998, 89 L.Ed.2d 123].) Second, the attorney-client privilege does not protect “independent facts related to a communication; that a communication took place, and the time, date and participants . . . .” (State Farm Fire & Casualty Co. v. Superior Court (1997) 54 Cal.App.4th 625, 640 [62 Cal.Rptr.2d 834].) A defendant, therefore, freely may adduce the “date on which [a plaintiff] first conferred with [another attorney] in regard to the very matter which is the gravamen of the present action” (Coy v. Superior Court (1962) 58 Cal.2d 210, 219 [23 Cal.Rptr. 393, 373 P.2d 457, 9 A.L.R.3d 678]), in order to suggest a fact finder should discount the plaintiff’s protestations of ignorance. Third, a plaintiff who exposes any significant part of a communication in making his own case waives the privilege with respect to the communication’s contents bearing on discovery, as well. (Evid. Code, § 912, subd. (a).) Fourth, any communication by the second lawyer with the defendant seeking, on behalf of the client, remedies for the alleged malpractice, would not be privileged and would, itself, constitute persuasive evidence regarding the time of discovery. Fifth, should the second lawyer provide an opinion in the malpractice case, he “may be cross-examined to the same extent as any other witness.” (Id., § 721, subd. (a).)
Any residual proof difficulty facing attorney malpractice defendants under the one-year-from-discovery period of section 340.6(a) is a consequence of the existing legislative policy balance, since, as we have demonstrated, the defendants’ burden to prove its elements follows from the statute’s plain language and Evidence Code section 500.